DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT
_____

GRACE OTTONE,

Appellant,

v.

WILLIAMSON INVESTMENTS, LLC,
d/b/a FLORIDA VILLAS MOBILE HOME PARK;
SHARON CHEESEMAN and UNKNOWN RESIDENTS at
37825 Poncan Circle, Zephyrhills, Florida,

Appellees.

No. 2D22-1260
_____

November 17, 2023

Appeal from the County Court for Pasco County; Kent Compton, Judge.

Marissa Constant of Constant Law, P.A., Bartow, for Appellant.

No appearance for Appellees.


ROTHSTEIN-YOUAKIM, Judge.

Williamson Investments, LLC, d/b/a Florida Villas Mobile Home Park (the Park), brought an eviction action against Grace Ottone and her adult daughter, Sharon Cheeseman, pursuant to section 723.061(1)(c), Florida Statutes (2022). After a bench trial, the court entered an eviction order, which Ottone appeals here. Because competent substantial evidence supported the court's finding that Ottone and Cheeseman had committed an endangering act and because Ottone does not contest on

appeal that that act violated a properly promulgated rule, rental agreement provision, or section of chapter 723, we must affirm.

In its complaint, the Park alleged that Ottone and Cheeseman had threatened park management and residents with physical violence, had moved an unauthorized shed onto their rented lot, and had associated with Brock Schultz, an individual who had been recently charged with trafficking methamphetamine and was suspected of having done so while on park property. The Park further alleged that these acts violated its rules; endangered the life, health, safety, welfare, or property of the park residents; and interfered with residents' peaceful enjoyment of the park.

Two of the Park's managers, Christina Halliday and Lynn Wyatt, testified at trial.[1] Halliday testified that she and Wyatt had visited Ottone's lot and had noticed an unauthorized shed on the property, at which point Cheeseman and Schultz had yelled at and threatened them. Wyatt largely corroborated Halliday's testimony and added that she had received drug-related complaints about Schultz and had seen Schultz with Cheeseman. Notably, the evidence did not identify which, if any, park rule or regulation, rental agreement provision, or section of chapter 723 this conduct violated.

Cheeseman and three other defense witnesses testified that park management had caused the aggressive interaction with Schultz and Cheeseman, and they denied being involved in or witnessing any drug activity at Ottone and Cheeseman's home. Specifically finding the Park's

---

[1] Because we have no transcript of the trial, we take these facts from the approved "Statement of Evidence" under Florida Rule of Appellate Procedure 9.200(b)(5).

2

witnesses credible and the defense witnesses (other than Ottone herself)[2] not credible, the court ultimately found that Ottone and Cheeseman had violated "a number of park rule(s), [a] lease provision, or [a] section of Chapter 723" and that these violations were "of a nature or type that threaten[ed] the health, safety, welfare and peaceful enjoyment of other Park residents."

We review a trial court's legal conclusions de novo and its factual findings for competent, substantial evidence. *See, e.g.*, *Corya v. Sanders*, 155 So. 3d 1279, 1283 (Fla. 4th DCA 2015) ("After a nonjury trial, review of trial court decisions based on legal questions are reviewed *de novo* and those based on findings of fact from disputed evidence are reviewed for competent, substantial evidence.").

Under section 723.061(1)(c)1, a court may find grounds for eviction if a mobile home park establishes both (1) that the tenant violated "a park rule, regulation, the rental agreement," or some section of chapter 723 and (2) that the tenant's transgression constituted an act which "endangered the life, health, safety, or property of the park residents or employees or the peaceful enjoyment of the mobile home park by its residents." § 723.061(1)(c)1. Here, the findings and conclusions that the trial court included in its final judgment suggest that the judgment was premised on that subsection.

As noted above, although the Park surely had opportunity to provide input, *see* Fla. R. App. P. 9.200(b)(5), the approved "Statement of the Facts" recounts no evidence concerning what park rule or regulation, provision of Ottone and Cheeseman's rental agreement, or section of

---

[2] Ottone testified that she was ninety-two years old, hated drugs, and had not done anything wrong.

chapter 723 was assertedly violated.[3] But although Ottone argues on appeal that the evidence did not support the trial court's ruling, she does not specifically challenge what appears to be a lack of evidence on this point, and "[t]his [c]ourt will not depart from its dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally has chosen not to mention." *Burke v. Burke*, 330 So. 3d 84, 86 (Fla. 2d DCA 2021) (quoting *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983)), *review denied*, No. SC22-82, 2022 WL 1566687 (Fla. May 18, 2022). Although this principle always guides us, we think it makes especial sense here, where we have a limited record and counsel's decision concerning what arguments to raise on appeal may be guided by considerations that are not otherwise readily apparent.

That said, however, we cannot grant relief based on an argument that has not been made, *see I.R.C. v. State*, 968 So. 2d 583, 588 (Fla. 2d DCA 2007) ("In considering I.R.C.'s appeal, we are limited to the specific issues that I.R.C. has raised."), and the arguments that Ottone *does* make do not undermine the trial court's judgment of eviction pursuant to section 723.061(1)(c)1. Ottone argues that the evidence failed to link her and Cheeseman to Schultz's alleged drug activity and failed to show that Cheeseman had criminally assaulted park management, thus suggesting no basis for eviction under section 723.061(1)(b). She also argues that the Park failed to afford her seven days to correct the allegedly noncomplying unauthorized shed, a prerequisite for eviction under

---

[3] Although counsel for the Park entered an appearance and initially requested an extension of time to file an answer brief, the Park never filed an answer brief in this appeal.

section 723.061(1)(c)2. The court, however, heard and found credible competent evidence that Cheeseman and Schultz had threatened managers Halliday and Wyatt, which would support a finding that Ottone and Cheeseman had committed an act endangering the safety of park employees as required for eviction under section 723.061(1)(c)1.[4] Accordingly, we affirm the judgment of eviction based on that section.

Affirmed.

SILBERMAN and LUCAS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

_____

[4] Although the trial court premised eviction under that section on a finding that the alleged acts "threaten the health, safety, welfare and peaceful enjoyment of other Park residents," under the tipsy coachman doctrine, we must affirm a trial court's ruling so long as the record includes some supporting basis. *See Marquardt v. State*, 156 So. 3d 464, 481-82 (Fla. 2015) ("[A] trial court ruling that is based on improper reasoning will be upheld if there is any basis in the record to support the ruling.").